Middleton, J.
The relatrix, Mary E. McGowan, is the person of that name who circulated petitions for other candidates which petitions became the subject of litigation and were considered by this court in State, ex rel. Bass, v. Board of Elections (April 2, 1952), ante, 345. As in that case, the hearing before *431 the Board of Elections of Summit County in the instant case was had under the provisions of Section 4785-70, General Code, which provides in part:
“If they [the board] find that such candidate is not an elector of the state, district, county or political subdivision in which he seeks a party nomination or election to an office or position, or has not fully complied with the law relating to primary elections, his declaration of candidacy and petition shall be determined to be invalid. * * *” (Emphasis supplied.)
Under this statute the board of elections, in order to sustain the protests, must find either that a candidate is not an elector or that he has not fully complied with the law relating to primary elections. Pertinent to the first question thus posed, Section 1 of Article V of the Constitution of Ohio provides:
“Every citizen of the United States, of the age of twenty-one years, who shall have been a resident of the state one year next preceding the election, and of the county, township, or ward, in which he resides, such time as may be provided by law, shall have the qualifications of an elector, and be entitled to vote at all elections.”
It is conceded that Mary E. McGowan was 21 years of age and fully met the residence requirements. The first question, therefore, is whether she was a citizen. She could have become a citizen either by birth or through the process of naturalization.
It was established, beyond controversy, that Mary E. McGowan was born April 25, 1885; that she had lived in Akron continuously either from birth or from the time she was a young child; that throughout her adult life she had been recognized as a member of the Democratic party and had filled various positions in the organization of that party; and that her father was James McGowan who emigrated from Ireland. It de *432 veloped that two men by the name of James McGowan immigrated from Ireland to Ohio, one in 1881 and the other in 1884. The James McGowan, whom relator claims was her father, was the one who entered the United States in 1884. His declaration of intention to become a citizen was filed November 8, 1890, and his naturalization was completed November 8, 1892. The other James McGowan appears to have been naturalized in 1888. Consequently, Mary E. McGowan would have attained citizenship if she were the daughter of either one of the men named James McGowan. The evidence is conclusive that the James McGowan who came to the United States in 1884 and was naturalized in 1892 was the father of Mary E. McGowan, and we so find.
After the passage of the compulsory registration law, the relatrix registered with the Board of Elections of Summit County. This registration was effected on October 2, 1930, upon a registration form then prescribed by the board of elections and which conformed to the requirements of the General Code of Ohio. That registration card, which was in the files of the board of elections continuously from 1930 to the initiation of the present proceeding and which is made a part of the record of this case, shows that the relatrix voted each year from 1930 to and including 1951. As provided by statute that registration form required the registrant to answer certain questions, including, “Place of birth?” “Native or naturalized citizen?” and “If naturalized, when, where, in what court?” The answer made by the relatrix, when thus registering, to the first question was, “Ohio” and to the second question, “Native.” No answer was given to the third question. The affidavit attached to this registration form read:
*433 “State of Ohio, county of Summit, ss.
“I, Mary E. McGowan, being duly sworn on oath-affirmation, do swear-affirm, that the statements herein contained are, to the best of my knowledge and belief, true; and that I am legally qualified to vote.
“Mary E. McGowan.”
The ground of the protests is that the facts set forth by Mary E. McGowan on her registration card were not true with respect to her place of birth, and the board of elections found that she had made false statements in her registration as to her place of birth and nativity. The supporters of the protests urged that she was born in Ireland and came to America as a small child and that she was, therefore, guilty of making an untrue statement which caused the registration to be void, even though citizenship may have been acquired through naturalization of her father when she was under 21 years of age. They urged that under such circumstances she did not fully comply with the law relating to primary elections.
Some evidence indicated that she was born within a week after her parents arrived in Akron from Ireland. She testified that she did not know with certainty where she was born; that her mother always said she was born in Akron; that other relatives said she was born in Ireland; and that one uncle always compromised and claimed she was born on the boat. She testified that to her best knowledge and belief she was born in Akron and that she so believed when she registered with the board of elections in 1930.
It is understandable that the relatrix might not have had definite information as to where she was born but under the circumstances of this case it can not be said, nor has it been found, that the relatrix fraudulently misstated the facts when she answered the questions *434 to the effect that she was horn in Ohio and was a native citizen. The affidavit made by her in that connection was made as being “to the best of my knowledge and belief. ’ ’ The facts developed in this record would warrant her belief that she was a native citizen. Furthermore, if her citizenship was acquired through naturalization of her father, the form of the affidavit provided no occasion for making such explanation. She herself was not naturalized and, therefore, she could not have answered the third question contained in the registration form. It was her father who was naturalized and if she was born in Ireland immediately before the father came to America she would have acquired citizenship automatically by reason of his naturalization. The complete record of her father’s naturalization is in evidence as an exhibit.
It is well said in the opinion of the Court of Appeals in this case:
“The duty of the election board is to see to it that only those who are privileged by law to vote are permitted to exercise that sovereign right. It is equally their duty not to deprive one who is by the Constitution and laws of the United States and state of Ohio an elector of the right to vote or run for public office. ’ ’
It is manifest that the relatrix was either a native-born citizen, as she apparently considered herself at the time of registration in 1930, or was then a citizen of many years standing through the naturalization of her father.
We, therefore, conclude that as a matter of law Mary E. McG-owan was a qualified elector at the time of filing her declarations of candidacy and that any inaccuracies in her registration in 1930 which formed the basis of the protests in question were not a sufficient basis upon which to deprive her of her right of citizenship or of her right to vote or of her right to become *435 a candidate for office or upon which, to cancel her registration. ' We ag-ree with the decision of the Court of Appeals that, upon the face of the record as a matter of law, the relatrix is entitled to the writ as prayed for directing the board of elections to vacate the cancellation of her registration and to place her name on the ballot of the Democratic party as a candidate for Congress from the 14th Congressional District of Ohio and also as a candidate for Democratic state central committeewoman from the 14th Congressional District of Ohio at the primary election to be held May 6, 1952. It is so ordered.

Judgment affirmed.

Stewart, Taet, Matthias and Hart, JJ., concur.